UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES LUDWIG, JR.,

        Plaintiff,

v.                                                                Case No.14-C-1483

CAROLYN COLVIN,

        Defendant.

## DECISION AND ORDER

Plaintiff filed this *pro se* action challenging the decision of the Commissioner of Social Security denying his disability benefits. An earlier administrative law judge's (ALJ) adverse decision was remanded by the Appeals Council for further development. On remand, a second ALJ issued an unfavorable decision, which the Appeals Council did not disturb. That decision, which is the final decision of the Commissioner, is now before me. For the reasons given below, the decision of the Commissioner will be affirmed.

**I. Background**

Plaintiff suffers from diabetes and obesity but alleged disability largely due to back pain and mental health issues, including depression and anxiety. The administrative law judge (ALJ) found that the Plaintiff's diabetes was reasonably controlled with medication, although the Plaintiff himself was sometimes noncompliant and did not test his blood sugar routinely. As for back pain, the ALJ noted that in a consultative exam the examiner did not perceive indicia of *any* back pain during the exam, perceiving instead that the Plaintiff was exaggerating his symptoms. (R. 17.) For

example, the examiner observed that during the exam the Plaintiff "moves about the chair rather fluidly and appropriately," with no vocalizations or facial expressions suggestive of pain. (R. 429.) The ALJ also found that the Plaintiff received no treatment for his back pain apart from medications, which he used sparingly, and appeared to be doing "fine" and in "no acute distress" during a 2013 appointment with his treatment provider, a physician's assistant. (R. 488-89.) The Plaintiff also indicated his pain was better when he was more active. (R. 488.) Nevertheless, in an apparent abundance of caution, the ALJ concluded that given the Plaintiff's obesity and degenerative disk condition, it was reasonable to believe that he did experience some degree of lower back pain. Thus, the ALJ restricted the Plaintiff to light work with the ability to shift positions.

Much of the analysis was based on Plaintiff's mental health conditions. The ALJ noted that Plaintiff originally had not seen a psychologist or psychiatrist but merely his family doctor. The doctor prescribed medications but Plaintiff did not take them, due to side effects. Eventually the Plaintiff had an episode requiring him to be hospitalized for five days, at which point he then began receiving treatment from a psychiatrist, Dr. Oelschlager. The ALJ noted that Plaintiff's condition improved dramatically once he began following a medication regimen. Treatment notes from the psychiatrist indicate continued medication for depression and bipolar disorder (citalopram, geodon), diagnosis through a sleep clinic, and GAF scores beginning at 59 and then increasing up to 63 as treatment in 2011 progressed, indicating mild limitations. (R. 454, 457, 461, 451.) *Sims v. Barnhart,* 309 F.3d 424, 427 (7th Cir. 2002) ("A GAF score of 61–70 reflects mild symptoms or "some difficulty" in those areas, but the individual "generally function[s] pretty well.") (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed.

2

1994))). There were indications of "irritability" but things had been "fairly stable" since the Plaintiff began taking medication. (R. 460.) In November 2011, he scheduled an emergency visit after failing to take his medication for a few days, but on the day of the visit he reported having a "good day" and "feeling more like his old self." (R. 447.) According to the treatment notes, the problem was likely due to the Plaintiff's incorrect procedure for taking his medication. Despite the relatively mild conditions noted in the treatment records, and the GAF scores in the sixties (indicating only mild difficulties), Dr. Oelschlager filled out a disability form, at counsel's request, indicating that the Plaintiff was "markedly limited" in his ability to carry out "an extensive variety of technical and / or complex job instructions" and to withstand the stresses of an eight-hour job. (R. 462.)

Plaintiff's physician-assistant also wrote a "to whom it may concern" letter, indicating that the Plaintiff suffers from major depression, that he has difficulty staying on task, is low-functioning intellectually, and has lower back pain causing restrictions in his ability to work. (R. 471.) The ALJ discounted the PA's opinion in part because, as a PA, she was not qualified to render opinions on Plaintiff's mental health issues. The ALJ also noted that the treatment records indicated minimal treatment for his lower back pain, and that the consulting examiner essentially found that he was exaggerating his symptoms.

The ALJ's decision relied heavily on the consultative examination of Dr. Schedgick, a Ph.D. psychologist. Throughout his exam report, Dr. Schedgick reiterates a belief that the Plaintiff was giving much less than his full effort and was attempting to be deceptive on several occasions. For example, on one occasion he claimed he did not know the birthdates of his children, but then slipped up and admitted he did. (R. 426.) When the Plaintiff realized he had slipped up, he became

3

"hostile" and "deceptive." (*Id.*) Dr. Schedgick also noted that Plaintiff had spent a year in jail but claimed he'd only been cited for traffic violations, which was another instance of deception. (R. 427.) In cognitive tests, the examiner noted the Plaintiff was unmotivated and his cooperation level was "minimal." (R. 428.) The examiner was "concerned that this individual may be trying to present himself in a rather bad light." (*Id.*) Ultimately, Dr. Schedgick concluded that the Plaintiff can function "quite adequately" and assessed a GAF score of 70 to 80, indicating only mild or minimal impairments, if any. (R. 438-39.) The Plaintiff could remember and follow instructions, interact with coworkers and supervisors, adequately focus and concentrate, and could function at an appropriate pace and handle stress. (R. 439-40.)

From this exam, the ALJ concluded that the Plaintiff's mental health issues were not significantly limiting in terms of his ability to obtain employment. He found Dr. Schedgick's report more consistent with the overall medical record and thus gave it more weight than the form Dr. Oelschlager filled out or the letter from the physician's assistant. This resulted in a finding of a residual functional capacity (RFC) to perform light work with restrictions on climbing, ladders, crouching, crawling, etc. The work would be limited to unskilled, with only occasional interaction with the public and co-workers, and low-stress, defined as having only occasional decision making and changes in the work setting. (R. 16.)

**II. Analysis**

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue,* 662 F.3d 805, 811 (7th Cir.2011). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue,* 478 F.3d 836,

4

841 (7th Cir.2007).

**A. Medical Opinions**

Plaintiff argues that the ALJ erred by failing to give greater weight to the opinion of his treating psychiatrist and physician's assistant. An ALJ may discount a treating source's opinion if it is inconsistent with the opinion of a consulting physician or if the treating source's opinion is internally inconsistent, as long as the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability." *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000). Here, the ALJ discussed the medical evidence at length, noting that Dr. Oelschlager's treatment notes repeatedly indicated only mild or moderate limitations, and this was true even after the "emergency" session Plaintiff scheduled after missing several doses of his medication. (R. 447.) There is nothing in those records to indicate "marked" limitations in the abilities Dr. Oelschlager found in the check-the-box disability form he filled out, which also stand in contrast to the relatively high GAF scores he consistently assigned. Thus, the ALJ not surprisingly concluded that the psychiatrist's checked boxes, as well as the PA's opinion, were inconsistent with the broader, fuller medical record as a whole.

This was particularly reasonable in light of the report of the consulting examiner, who interviewed the Plaintiff at length and concluded he was exaggerating his symptoms—possibly dramatically— and was being deceptive in an effort to make himself seem more limited than he actually was. Seldom is a treatment report so rife with observations about deceptive behavior, and Dr. Schedgick's observations, which are the impressions of an unbiased medical provider, allowed the ALJ to view the opinions of Plaintiff's treating providers with some additional skepticism. *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("When treating and consulting physicians

5

present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision.").

In sum, this is a case in which the treating source's opinion was internally inconsistent because the boxes he checked were much more restrictive than any limitations discussed in his extensive treatment notes, and in fact stood in contrast to the GAF scores he assigned. In addition, the opinion of the consulting source, another mental health professional who interviewed the claimant, conflicted sharply with that opinion. Not surprisingly, both ALJs who looked at the evidence concluded the Plaintiff was not disabled. As the Seventh Circuit has explained:

> Normally, [a] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record. However, while the treating physician's opinion is important, it is not the final word on a claimant's disability. As we previously have noted,[t]he patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability. An ALJ thus may discount a treating physician's medical opinion if it the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.

*Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007) (internal quotation marks and citations omitted).

Finally, Plaintiff also suggests the ALJ should have considered the opinion of his new psychiatrist, Dr. Beld. First, as the government notes, Dr. Beld is not entitled to be considered a "treating source" because he had only seen the Plaintiff once. 20 C.F.R. §§ 404.1502, 416.902. Second, Beld's report from 2013 does not support a finding of disability either. Dr. Beld indicates evidence of anxiety and depression but "no evidence of schizoaffective or bipolar disorder despite previous diagnoses." (R. 500.) Nor is there any indication that Dr. Beld believed Plaintiff's

6

symptoms would preclude him from working. Accordingly, I conclude that the ALJ properly evaluated the medical evidence and explained in some detail why he chose to credit the opinion of the consulting examiner over the treating source opinions.

**B. Credibility**

Plaintiff also argues that the ALJ failed to properly assess his credibility. His argument on this point consists solely of a citation to the governing regulations, without any explanation for *how* the ALJ erred. Here, like many cases, there was little "hard" evidence of Plaintiff's conditions because they were based on claims of pain, depression, anxiety, and the like. Thus, the ALJ's credibility determination essentially dovetailed with his view of the medical evidence. Put another way, in evaluating that evidence the ALJ was also evaluating the Plaintiff's credibility, because the Plaintiff's own statements to his treatment providers was the source of their conclusions. As noted above, given the unfavorable report written by Dr. Schedgick, who concluded the Plaintiff had a quite high ability to function and was attempting to portray himself in a much worse light, the ALJ was well within his rights to conclude that the Plaintiff's statements about his own symptoms were not entirely credible. "So long as an ALJ gives specific reasons supported by the record, we will not overturn his credibility determination unless it is patently wrong." *Curvin v. Colvin,* 778 F.3d 645, 651 (7th Cir. 2015).

**C. Residual Functional Capacity**

Finally, the Plaintiff argues the ALJ failed to properly determine his RFC, although once again the Plaintiff does not elaborate as to *how* the ALJ erred, apart from a citation to the decision of the Appeals Council. (R. 139.) In remanding the first ALJ's decision, the Council indicated that the ALJ had failed adequately to explain what impact the Plaintiff's mental limitations would have

7

on his ability to work. The original ALJ had found moderate and severe limitations on the ability to understand and interact with others (R. 129) but did not indicate exactly how those limitations would impact Plaintiff's RFC. (R. 139.) In the second ALJ's decision, however, the ALJ concludes that Plaintiff's depressive symptoms could cause him to be off-task 10% of the workday, will cause him to isolate himself from others, and would allow him only limited decision-making. (R. 18.) Thus, these (and other) limitations were part of the RFC and the calculus for determining whether, and how many, jobs would be available. Accordingly, the Appeals Council did not grant review of the more recent decision, and I find no error in the ALJ's handling of the RFC.

**III. Conclusion**

For the reasons given above, the decision of the Commissioner is affirmed.

**SO ORDERED** this 13th day of January, 2016.

      /s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court